UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THEODORE B. EDENSTROM,<br><br>      Plaintiff,<br><br>  v.<br><br>THURSTON COUNTY, MIKE KAIN, and SETH J. SCHADE,<br><br>      Defendants. | CASE NO. 3:16-cv-05982<br><br>(1) ORDER GRANTING DEFENDANTS THURSTON COUNTY AND MIKE KAIN'S MOTION FOR SUMMARY JUDGMENT AND (2) ORDER TO SHOW CAUSE |

THIS MATTER comes before the Court on Defendants Thurston County, Washington and Mike Kain's (collectively "County Defendants") Motion for Summary Judgment. Dkt. 37. The Court has considered the pleadings filed in support and in opposition of the file, including the Plaintiff's supplemental brief filed on August 14, 2017 (Dkt. 44), the County Defendants' supplemental brief filed on August 18, 2017 (Dkt. 50), and the remaining record.

On November 25, 2016, Plaintiff, *pro se*, filed a civil rights complaint asserting claims against Defendants for violations of his Fourth, Fifth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983. Dkt. 1. The County Defendants now move for summary judgment of dismissal. Dkt. 37. For the reasons provided herein, the motion should be granted. Further,

1 Defendant Shade and Plaintiff should show cause in writing, if any they have, why constitutional claims against Defendant Schade should not also be dismissed and why the Court should not decline supplemental jurisdiction over the remaining state law claims.

## I. FACTUAL BACKGROUND AND PENDING MOTION

### A. FACTS

Plaintiff owns waterfront property commonly known as 9733 Hunter Point Road NW, Olympia, Washington ("the Property"), which is in Thurston County. Dkt. 1. According to the Complaint, Plaintiff moors his barge on the shores of the property. *Id.*

On November 26, 2013, the Thurston County Resources Stewardship Department sent Plaintiff a letter, entitled "Notice of Violation." Dkt. 37-1, at 1-2. The letter indicates that the Thurston County Compliance Section of the department had "received a complaint regarding the use of [Plaintiff's] property." *Id*. The letter cites two Thurston County zoning ordinances and informs Plaintiff that "[t]hese codes mean that a commercial business cannot be operated from your property without appropriate permits." *Id*. The letter further provides:

> It has been brought to our attention that unpermitted commercial activity may be taking place on the above referenced property. To be in compliance with the applicable codes, this activity requires approval of a Special Use Permit and a Shoreline Substantial Development Permit. Until these permits are obtained, no additional commercial use of the subject property is permitted.

Dkt. 37-1, at 1. The letter also warns that "[f]ailure to comply with the Thurston County Code could result in the issuance of a Class 2 Civil Infraction or other appropriate legal action." *Id*. at at 2. The letter has a web address to apply for the referenced permits and gives a number to call for questions. *Id*. The letter was signed by Guy Jaques, who is not an individual defendant in this case. *Id*. Plaintiff did not appeal the Notice of Violation letter in writing to a hearing examiner. *But see* Thurston County Code 20.60.060(1).

In an unsworn declaration submitted by Plaintiff (Dkt. 45), which the Court technically should not consider, *see* 28 § U.S.C. § 1746, Plaintiff represents that, after receiving the Notice of Violation letter, he called the County employee who signed the letter, Mr. Jaques. According to Plaintiff, Mr. Jaques told him that "virtually any unauthorized, unpermitted use . . . within the 200' buffer of the water was subject to disciplinary action unless [Plaintiff] initiated and paid for a shoreline hearing[.]" Dkt. 45 at 1, 2. Not being able to afford the permits, Plaintiff the following week "turned [his] job over to another contractor due to the fact that I could not utilize my land and tidelands for ingress, regress/navigation, related to the use of my vessel or the loading of my products and equipment." *Id*.

On January 6, 2014, Plaintiff, Mr. Jaques, Defendant Kain and the County's lawyer met to discuss the Notice of Violation letter and Plaintiff's options moving forward. Dkt. 38, at 3. Plaintiff's declaration also states that Plaintiff has contacted the County on, at least, several occasions since then, without response from the County. Dkt. 45 at 2-4. According to the County, Plaintiff has not applied for any permits to date, however, the County "has taken no further enforcement action against Plaintiff on the alleged violation since issuing the November 26, 2013 letter." Dkt. 38, at 4.

The Notice of Violation letter appears to have been issued at least in part based on emails to the County from a neighbor reporting unpermitted commercial waterfront activities on Plaintiff's property. *See* Dkt. 44-13. According to Plaintiff, Defendant Mike Kain acknowledged that the source of the emails was Defendant Schade. Dkt. 45 at 3.

More recently, on February 15, 2017, according to declarations by Richard Smith and Plaintiff's son, Logan Edenstrom, which the Court technically should not consider, *see* 28 § U.S.C. § 1746, Defendant Schade was observed in a dinghy boat next to Plaintiff's boat, placing

oil next to Plaintiff's boat the day before its inspection by the Coast Guard. Dkts. 46-48.

**B. CLAIMS AND PROCEDURAL HISTORY**

On November 25, 2016, almost three years after the County issued the Notice of Violation letter, Plaintiff filed this case. The Complaint alleges that Defendants violated Plaintiff's Fourth Amendment rights when they "searched [his] residence without [his] knowledge, presence or respect for posted no trespass signs." Dkt. 1, at 3. The Complaint also alleges violations of the Fifth and Fourteenth Amendment when Defendants "issued a stop work order without any substantial due process, seizing Plaintiffs [sic] effects, taking liberty and property without compensation." *Id.* Plaintiff's complaint asserts that he is "again in danger of losing [his] residence for taxes." *Id.* at 4. Plaintiff asserts that Defendants' actions have impeded his "rights to navigation, trade of all kinds, build a house, borrow against the property for maintenance, repairs, taxes and so forth . . ." *Id.* Plaintiff seeks damages and injunctive relief requiring the Defendants (1) present what authority they are claiming that allows the requirement of permits, (2) explain how that authority can be exercised without due process, (3) repay damages, and (4) notify the Washington Attorney General of any wrongful acts. *Id.* at 6.

On March 20, 2017, Plaintiff's motion for judgment on the pleadings was denied. Dkt. 26. The Court found that Plaintiff failed to show that there was no genuine issue of material fact for both necessary elements of a § 1983 claim: deprivation of a constitutional right and action done under color of law, *particular to* all three defendants. Dkt. 26, at 4. The Order notes that:

> For example, although the County Defendants concede that Defendant Kain acted under 'color of law' when acting in his official supervisor capacity, Plaintiff has not established a constitutional deprivation personal to him, and general theory of supervisory liability is not enough. *Monell*, 436 U.S. at 694. Or for example, as to Defendant Schade, Plaintiff has not established color of law. Plaintiff argues that Defendant Shade "colluded" with Thurston County, but there is at least a genuine issue of material fact as to the circumstances surrounding his conduct and thus the legal determination of whether it is "fairly attributable" to the government. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th

Cir. 2003) ("at least four criteria to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus").

Second, even if Plaintiff's broad theories of liability were sufficient—and they are not—issues of material fact abound as to whether a constitutional deprivation occurred, especially at this early stage of the litigation, before the close of discovery. Based on the pleadings, it is not clear to the undersigned what Due Process violation occurred.

*Id.* at 4-5.

### C. PENDING MOTION

The County Defendants now move for summary dismissal of Plaintiff's claims against them. Dkt. 37. They argue that Plaintiff cannot establish that he was deprived of a constitutional right. *Id.* The County Defendants assert that to the extent that Plaintiff is asserting a claim for a "regulatory taking," his claim should be summarily dismissed. *Id.* To the extent that Plaintiff is asserting some other due process claim, the County Defendants also maintain the claim should be summarily dismissed. *Id.*

In his initial response, Plaintiff asserts that the County has issued "several stop work orders and/or notice of violation" letters without due process since 2007. Dkt. 40. He states that he has "yielded and adjusted his activities to comply with these orders to the point of having to cease all activities related to using his vessel upon his tidelands." *Id.* at 2. Plaintiff acknowledges that he has discussed these orders with the County and was advised he either had to obtain the permits required or pay for a public hearing. *Id.* at 3. Plaintiff's Response also includes a section entitled "E. Related issues needed for summary judgment in Plaintiff's favor," in which Plaintiff states that he "will provide records of his contract terms that were interfered with at the time of the last [Notice of Violation] and is willing to discuss settlements for damages with Thurston County under this court's discretion and oversight." Dkt. 40, at 14-15. Plaintiff's Response further provides that Plaintiff "will adjust and provide a witness list and submit it to this court for

the continuance of the matter with Defendant Seth J. Schade if the motion is ruled in Plaintiff's favor." *Id.*

After Plaintiff received a warning pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), Plaintiff was given an opportunity to file the supplemental response brief, and the County Defendants were given an opportunity to file the supplemental reply brief. Dkts. 43, 44, 50.

### D. ORGANIZATION OF OPINION

In sequence, this opinion will (1) introduce the applicable standard for motions for summary judgment, (2) analyze the County Defendants' motion for summary judgment of dismissal as to constitutional claims asserted against them, (3) analyze Plaintiff's motion for summary judgment, to the extent it should be considered, and (4) address claims asserted against Defendant Schade and issue an order to show cause regarding those claims.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, discovery, affidavits, and any other materials on file show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e).

The determination of the existence of a material fact is often a close question. The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. VIOLATIONS OF CONSTITUTIONAL RIGHTS GENERALLY UNDER 42 U.S.C. § 1983

In order to prevail on a claim brought under 42 U.S.C. § 1983, the plaintiff must make a showing that (1) the defendants deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) the defendants acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986). Liability must be established as to each defendant individually. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violations are not sufficient. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965

(9th Cir. 1982).

Plaintiff states that he is suing Defendant Kain only in his official capacity, not in his individual capacity. Dkt. 40, at 14. A suit against a county official in their official capacity is a suit against the government entity, in this case, Thurston County. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). In order to successfully plead §1983 liability on the part of the County, Plaintiff must allege: (a) he was deprived of a constitutional right; (b) the County had a policy; (c) the policy amounted to a deliberate indifference to his constitutional right; and (d) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001)(*internal quotations omitted*).

### C. VIOLATION OF FOURTH AMENDMENT PROHBIITION AGAINST UNLAWFUL SEARCHES/SEIZURES?

The Fourth Amendment provides that, "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV, § 1. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012).

Although not exactly clear, it appears that Plaintiff's Response advances two theories for Fourth Amendment violations: (1) Defendants' issuance of the Notice of Violation letter, which seized Plaintiff's property by "stopp[ing] use of Plaintiffs [*sic*] vessel and his facilities"; and (2) Defendant's search and seizure of Plaintiff's boat when entered upon, like a traffic stop. Dkt. 44 at 12. The first theory fails on two grounds. The theory should be rejected because the Notice of Violation letter requested only that Plaintiff comply with the law. The letter did not create any restrictions to Plaintiff's possessory interest in his property beyond what was already codified by statute. In other words, the letter was nothing more than a warning. The theory should also be

rejected because it appears to be a Fifth Amendment claim couched in Fourth Amendment language. Depriving a person of the use of their real property by means of a regulation is a takings claim, which is addressed below in Section D.

The second theory, that Plaintiff's vessel was at some point seized and searched, fails on account of the record. There are insufficient facts for the claim to proceed under this theory. Even when reconstructing the sequence of events in Plaintiff's favor and considering declarations not properly sworn under penalty of perjury, the record points only to an incident in March of 2017 where the Coast Guard boarded Plaintiff's boat. The Coast Guard, however, is not a party to the case, nor does it appear that any harm befell Plaintiff from that incident.

Summary judgment in favor of the County Defendants should be granted. This claim should be dismissed as to the County Defendants.

**D. VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT: TAKINGS?**

The Fifth Amendment to the United States Constitution prohibits the taking of private property, without just compensation, for public use. U.S. Const. Amend. V. The Fifth Amendment applies to the States (and their political units like the County here) through the Fourteenth Amendment. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 (2002). Takings cases are divided into two groups: physical takings and regulatory takings. *Id.*

    1. <u>Did the County Defendants Physically Take Plaintiff's Property?</u>

Physical takings cases are "governed by the simple rule that 'when the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner.'" *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088 (9th Cir. 2015), *quoting Tahoe–Sierra Pres. Council*, at 322.

Plaintiff makes no showing that the County Defendants physically took his property. To the extent that he makes such a claim against the County Defendants, summary judgment in favor of the County Defendants should be granted and the claim dismissed.

### 2. Did the County Defendants Take Plaintiff's Property by Regulation?

"[A] regulatory taking occurs where government regulation of private property is so onerous that its effect is tantamount to a direct appropriation or ouster." *Rancho de Calistoga,* at 1088-89 (*internal quotation omitted*). Before the Court can reach the merits of a regulatory takings claim, it must determine if the claim is ripe. *Id.* "The Supreme Court has articulated 'two independent prudential hurdles' that apply to federal regulatory takings claims." *Id.* at 1089 (*quoting Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 733–34 (1997). "First, there is a finality requirement—a claim is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* "Exhaustion is the second requirement—the owner [must have] unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." *Id*.

The matter is not ripe and the regulatory takings claim should be dismissed without prejudice.

#### a. Ripeness of Regulatory Takings Claim - Final Decision?

As to the finality requirement, Plaintiff has not shown that the County Defendants made a final decision. The Notice of Violation letter appears to be the primary focus of Plaintiff's claim, but the letter's own terms state that the failure to comply with generally applicable laws "*could* result in the issuance*" of a civil infraction or other legal action. There is no record that Plaintiff

applied for, and was denied, a permit or variance or was fined. On this record, the Court cannot find that Plaintiff sought a final decision.

### b. Ripeness of Regulatory Takings Claim - Exhaustion of State Remedies?

Further, Plaintiff has not met the second requirement of exhaustion. Plaintiff has failed to show that he exhausted the procedures provided by the state for obtaining "just compensation." Thurston County Code contemplates a two-step appeal process, where a person (1) in writing appeals a final decision to the County's hearing examiner; and (2) appeals that hearing to Superior Court. Thurston County Code 20.60.060. Plaintiff satisfies neither. Even if the Notice of Violation letter could be construed as a final decision, he did not appeal the letter in writing to a hearing examiner. Even if Plaintiff's meetings with County officials were to be construed broadly to satisfy the first step to appeal, there is no evidence that Plaintiff appealed that "decision" to Superior Court. Plaintiff did not exhaust state remedies.

Plaintiff's regulatory takings claim should be dismissed because the claim is not yet ripe.

### 3. Conclusion on Plaintiff's Takings Claims

Plaintiff has failed to point to any evidence that the County Defendants physically took any of his property contrary to the Fifth and Fourteenth Amendments. Plaintiff has failed to show that he received a final decision about commercial use of the property from the County or that he exhausted state remedies to receive "just compensation" if a regulatory taking had occurred. For prudential reasons, this Court should not reach Plaintiff's regulatory takings claim. Therefore, as to this claim, summary judgment in favor of the County Defendants should be granted. The physical takings and regulatory takings claims should be dismissed, with and without prejudice, respectively, as to the County Defendants.

### E. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Although it is unclear whether Plaintiff intended the five lines in his response to be a motion for summary judgment (Dkt. 40, at 14-15), it should be denied.

When motions are made, the caption of the pleading must clearly identify the motion as such. *See* W.D.Wash. Local Court Rule 7. The caption of Plaintiff's response does not indicate he intends to make a motion for summary judgment, and the pleading does not indicate a noting date other than the date for the County Defendants' motion.

Moreover, Plaintiff has failed to show that he is entitled to summary judgment in his favor on any of the claims. The reasoning from the March 20, 2017 Order denying Plaintiff's motion for judgment on the pleadings applies and is adopted here. Dkt. 26. To the extent Plaintiff's pleadings should be construed as a motion for summary judgment (Dkt. 40), the motion should be denied.

**F. CONCLUSION AND ORDER TO SHOW CAUSE**

By this order all federal claims against the County Defendants are dismissed. The remaining Defendant, Seth Schade, is a private citizen and Plaintiff's neighbor. Dkt. 1. Plaintiff maintains that Defendant Schade complained about his activities to the County, "was working with the County Commissioners" about Plaintiff's use of the property contrary to County zoning ordinances, and "electronically monitors and inspects [Plaintiff's] vessel" and activities on the property. *Id*. Plaintiff also asserts that Mr. Schade trespasses on his property. *Id.*

1. <u>Federal Constitutional Claims asserted against Mr. Schade</u>

Plaintiff's claims that the County Defendants violated his constitutional rights are dismissed by this order. As stated above, in order to find that Defendant Schade is liable under § 1983, there needs to be a showing that (1) Defendant Schade acted under "color of law" and (2) violated Plaintiff's constitutional rights. It is unclear that Plaintiff can make such a showing

1  where the claims against the County Defendants have been dismissed. Accordingly, Plaintiff and
2  Defendant Schade are ordered to show cause, in writing, if any they have, on or before
3  September 1, 2017, why Plaintiff's constitutional claims against Defendant Schade should not be
4  dismissed.

2.  <u>Jurisdiction over State Law Claims asserted against Defendant Schade</u>

Jurisdiction is a threshold issue that must be raised *sua sponte*. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). As is relevant here, a federal court has original jurisdiction over cases involving federal questions, 28 U.S.C. § 1332, or where the parties are diverse citizens and the amount in controversy is over $75,000, 28 U.S.C. § 1331. However, a federal court may exercise supplemental jurisdiction over state law claims asserted in cases in which the court has original jurisdiction. 28 U.S.C. § 1367(a).

As discussed above, the County Defendants are dismissed from the case. If the Court also dismisses the constitutional claims against Defendant Schade, the Court will not have a basis for original jurisdiction, either by means of federal question or diversity jurisdiction. The Court will then need to consider whether to exercise its supplemental jurisdiction over the remaining state law claim against Defendant Schade.

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if: (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of

economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims" or dismiss them without prejudice, or if appropriate, remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991), in the interest of fairness, Plaintiff and Defendant Schade should be given an opportunity to be heard on whether the state law claim for trespass, to the extent one is made, should be dismissed without prejudice. Plaintiff and Defendant Schade should be ordered to show cause, in writing, if any they have, by September 1, 2017, why this Court should not decline to exercise supplemental jurisdiction to dismiss the remaining state law claim for trespass without prejudice.

* * *

THEREFORE, it is hereby **ORDERED** that:

- Defendants Thurston County, Washington and Mike Kain's Motion for Summary Judgment (Dkt. 37) **IS GRANTED**:
    - Plaintiff's Fourth Amendment and Fifth and Fourteenth Amendment physical takings claims asserted against Defendants Thurston County Washington and Mike Kain **ARE DISMISSED;**
    - Plaintiff's Fourteenth Amendment regulatory takings claim asserted against Defendants Thurston County Washington and Mike Kain **ARE DISMISSED WITHOUT PREJUDICE**;
    - All claims are dismissed and the case closed as to Defendants Thurston County, Washington and Mike Kain.
- Plaintiff's Motion for Summary Judgment (Dkt. 40) **IS DENIED**;

1. - Plaintiff and Defendant Schade are each **ORDERED TO SHOW CAUSE**, in writing, if any they have, by **September 1, 2017**, why Plaintiff's constitutional claims against Defendant Schade should not be dismissed;
2. - Plaintiff and Defendant Schade are **ORDERED TO SHOW CAUSE**, in writing, if any they have, by **September 1, 2017**, why this Court should not decline to exercise supplemental jurisdiction to dismiss the remaining state law claim for trespass without prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 22nd day of August, 2017.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge